IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| KELLY MONROE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-652-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Philip W. Studenberg
200 Pine Street
Klamath Falls, Oregon  97601

　　　　Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204

Page 1 - OPINION AND ORDER

Carol A. Hoch
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

     Attorneys for Defendant

KING, Judge:

Plaintiff Kelly Monroe brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner.

## BACKGROUND

Monroe filed applications for DIB and SSI on June 9, 2003, alleging disability beginning September 3, 2001.  The applications were denied initially and upon reconsideration.  After a timely request for a hearing, Monroe, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 3, 2005.  A supplemental hearing was held on January 3, 2006.

On March 16, 2006, the ALJ issued a decision finding that Monroe was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.  Plaintiff has acquired sufficient quarters of coverage to remain insured through December 31, 2006.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

Page 3 - OPINION AND ORDER

do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and

416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner

proceeds to the fifth and final step to determine if the claimant can perform other work in the

national economy in light of his or her age, education, and work experience.  The burden shifts to

the Commissioner to show what gainful work activities are within the claimant's capabilities.

Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able

to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial

evidence and is based on correct legal standards.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998).  Substantial evidence is such relevant evidence as a reasonable person might accept as

adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I.    Monroe's History

Plaintiff was 50 years old at the time of the second hearing, and had previously obtained her GED. She had worked as a circuit-board assembler, waitress, and in-home caregiver. She complains of bipolar disorder, depression, attention deficit hyperactivity disorder, anxiety, knee problems, plantar fasciitis, and bilateral calluses. She began attending college classes full-time in business management courses, pursuant to a special grant she received after she was laid off from the manufacturing company where she was doing circuit-board assembly. She successfully completed classes in 2002 and 2003, but she did not re-enroll for a third year because she "couldn't handle it." Tr. 451.

According to the record, plaintiff was first treated for her depression, and bipolar symptoms by Robert P. Beaman, M.D., from 2000 through July of 2003. He also treated her for more routine matters. She reported increasing anxiety and depression related to her course work. In 2002, she started reporting sporadic anxiety attacks. In April of 2003, she reported having

Page 5 - OPINION AND ORDER

problems with anxiety, depression and insomnia.  Dr. Beaman prescribed Prozac, Zoloft,

Klonopin, Zyprexa, Lexapro, and Serzone at various times.  In July of 2003, Dr. Beaman referred

her to a psychiatrist.

William E. Davis, D.O. began treating plaintiff on July 30, 2003.  At that session, Dr.

Davis diagnosed plaintiff with Bipolar I Disorder Mixed with rapid cycling, ADHD, and

assigned a GAF score of 60.[1]  In that first session, plaintiff reported that she "has had depression

all her life, and it gets better and worse intermittently."  Tr. 236.  She stated that "she has been

more severely depressed for the last 12 years.  At times she has not functioned during that period

of time secondary to her depression.  She relates she initially went to the Health Department

because she could not stop crying."  Id.  When she is depressed, she is not motivated to do

anything, sleeps 14 hours a day, overeats and gains weight.  She assigned an 8 out of 10 to her

depression that day.  At that time she told Dr. Davis that she thinks about suicide, but had no

serious intention of committing suicide.

Dr. Davis saw plaintiff for medication management sessions five more times in 2003, and

for all those sessions he assigned a GAF of 70.[2]  During those sessions, she reported that she had

been crying almost every day (Tr. 231), thought about suicide now and then (Tr. 232), had

---

[1]A GAF of 51 to 60 is representative of  "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text Revision 2000) (DSM-IV) 34.

[2]A GAF of 61 to 70 indicates, "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV at 34.

difficulty getting out of bed as a result of the depression, was in bed approximately three fourths of the time, dropped two courses because she was failing (Tr. 223), and reported that she had one or two good days a week (Tr.221) but continued to have suicidal ideation (Tr. 221).  During four of the sessions in 2003, Dr. Davis described plaintiff as having problems with depression, but in the last session, he suggested that "she appears to be doing better."  Tr. 222.

In 2004, he repeatedly reported that she was "improved," "doing fair," "satisfactory," "doing some better," and "getting along good."  Tr. 321, 319, 317, 315, 313, 311, and 309.  The one exception was in August of 2004 when he reported that plaintiff appeared more depressed than she did during her last visit.  During the 2004 treatment sessions, Dr. Davis assigned GAF scores of 60, except for 65 and 70 levels during two sessions in March of 2004.

Similarly, throughout most of 2005, and her first two appointments in 2006, Dr. Davis described plaintiff as "upbeat," "getting along reasonably well," "slightly improved,""doing good," "in a good mood," "getting along well," "getting along . . . better than I have seen her," "not particularly depressed," "doing better today than usual," and "getting along remarkably well." Tr. 405, 403, 401, 399, 397, 395, 393, 391, 389, 387, 383, 381.  At the beginning of 2005, he assigned GAF scores of 60, but dropped her levels to 55 for most of 2005 and the beginning of 2006.

Dr. Davis prescribed many of the same medications Dr. Beaman prescribed, along with Risperdal, Eskalith, Strattera, Seroquel, Symbyax, Cymbalta, and Lamictal at various times.

The last report in the record prepared by Dr. Davis is from April 6, 2006, from a visit that took place after the ALJ's decision.  At that session, plaintiff reported that she felt "very sick mentally.  She relates that she is very manic at the present time.  She relates that she has been this

way for the past five weeks." Tr. 378. Dr. Davis noted that she "does appear to be significantly anxious," and appeared to be in a low-grade mania. Tr. 378-79.

Dr. Davis offered three opinions on plaintiff's mental health during his care of her. His August 18, 2003 letter stated, "This is to verify that my patient Kelly Monroe has ADHD and Bipolar disorder. Her attention span at this time is about 10 minutes." Tr. 322. His March 25, 2005 letter simply stated, "Because of [Monroe's] mental health she is not capable of active employment and is considered disabled." Tr. 282. Finally, his June 29, 2006 letter stated, "This [letter] is to verify that [Monroe] does have a significant mental health condition. When I last saw her I did not believe that she would be able to be employed for a period of at least one year." Tr. 23. Dr. Davis prepared this last letter after the ALJ made his decision.

Additionally, after the ALJ made his decision, plaintiff was treated by Teresa Rennick, PMHNP, on April 19, 2006. Rennick reported that she treated plaintiff at Phoenix Place, where plaintiff was "in respite." Tr. 376. She described plaintiff as "quite agitated, angry, [and in a] manic phase." Id. Plaintiff told Rennick about the ALJ's decision rejecting her social security claim. The nurse practitioner reported that staff felt plaintiff was "displaying some psychotic symptoms." Id. The doctor opined that "it does seem that some psychotic thinking is present most prominently some paranoia and delusions." Id. Rennick prescribed Eskalith, and assigned a GAF level of 45.[3]

---

[3]A GAF of 50 to 41 indicates, "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

Plaintiff has been treated by a podiatrist for plantar fasciitis and recurrent foot calluses. In 1998, she fractured her left knee and underwent open reduction and internal fixation of the left tibial plateau.

II.    The ALJ's Decision

The ALJ concluded that plaintiff's plantar fasciitis and bilateral calluses were severe impairments. Nevertheless, he concluded that plaintiff could perform medium work with a sit/stand option to accommodate her foot and knee pain. He rejected Dr. Davis' opinion that plaintiff was disabled as a result of her mental impairments, finding the opinions inconsistent with the doctor's office notes and unsupported by clinical evidence. As a result, he concluded that plaintiff's mental impairments, and knee pain, were not severe impairments within the meaning of the regulations. Finally, the ALJ concluded that plaintiff could perform her past-relevant work as an in-home caregiver, as she performed it, and as a sub-assembler.

## DISCUSSION

Plaintiff challenges the ALJ's decision on several grounds. First, plaintiff asserts that the ALJ improperly disregarded Dr. Davis' opinion that plaintiff was unable to work due to her bipolar disorder. She also contends the ALJ improperly relied on Dr. Beaman's reports that failed to describe significant mental symptoms. Plaintiff also challenges the ALJ's finding on her credibility, arguing that the ALJ failed to specifically identify the reasons for finding her not fully credible. She also argues that her bipolar disorder, depression, anxiety, and left knee impairments should have been considered to be "severe" impairments. As a result of these errors, she argues, her residual functional capacity did not contain the kinds of limitations that one would expect to see in someone suffering from bipolar disorder, anxiety and depression, and

left knee pain.  Finally, plaintiff points to new information that further supports her assertion that she suffered from severe mental impairments which impeded her ability to work.

I.    Medical Evidence

A.    Dr. Davis

Plaintiff challenges the ALJ's conclusion that Dr. Davis' opinion was entitled to little weight.

Dr. Davis wrote in August of 2003 that plaintiff suffered from ADHD and bipolar disorder, and that her attention span was about 10 minutes.  His March 2005 letter opined that plaintiff was unable to work due to her psychological problems.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Id. at 831.  Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent

with it.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found Dr. Davis' belief that plaintiff suffered from concentration difficulties to be inconsistent with "contemporaneous observations," referencing a case management service note describing plaintiff as "friendly, prepared and appreciative," and Dr. Davis' notes about plaintiff as having "well organized, rational, and sequential" thought processes.  Tr. 233, 239.

Dr. Davis' 2003 opinion about plaintiff's limited ability to concentrate was not supported by any clinical evidence, and his letter was conclusory.  An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings."  Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2003).  The ALJ gave clear and convincing reasons for rejecting Dr. Davis' opinion that plaintiff's attention span was about 10 minutes.

The ALJ also rejected Dr. Davis' opinions about the severity of plaintiff's depression and anxiety, finding plaintiff's 55 to 60 GAF levels inconsistent with Dr. Davis' notes describing plaintiff to be euthymic[4] and without significant symptoms.  Instead, the ALJ concluded that plaintiff's "main problems are marital and financial . . . . [H]er symptoms developed out of financial pressures and the lifestyle change surrounding her return to college and constant studying" and these "are financial and family situational problems, not mental impairments."  Tr. 34.

_____

[4]"(1) Joyfulness; mental peace and tranquility.  (2) Moderation of mood, not manic or depressed."  Online Medical Dictionary, http://cancerweb.ncl.ac.uk/cgi-bin/omd?euthymia.

Page 11 - OPINION AND ORDER

In almost all of the treatment notes prepared by Dr. Davis during the three years he treated her, Dr. Davis described plaintiff as euthymic. There were only a few exceptions to this description. In November of 2003, although he identified her GAF level as 70, Dr. Davis described plaintiff as appearing to be depressed and noted that her "affect is congruent with depression." Tr. 224. Similarly, in August of 2004, he wrote, "It is of note that her mood appears to be moderately depressed today," and assigned a GAF level of 60. Tr. 415. Finally, in April of 2006, assigning a GAF level of 55, he wrote, "She does appear to be significantly anxious. . . . She does not look like she feels good." Tr. 379. This April visit occurred after the ALJ's decision.

On the whole, as the ALJ noted, Dr. Davis repeatedly described plaintiff's mental health as improving or getting along well. Furthermore, when Dr. Davis described plaintiff as euthymic, he would also note inconsistencies in her stated level of depression or anxiety as compared with her appearance. For example, Dr. Davis noted in October of 2004 that plaintiff's "affect is not consistent with her stated level of depression." Tr. 411. In November of 2004, Dr. Davis remarked, "Even though she states today that she is manic she is not behaving in a manner that would be consistent with manic behavior." Tr. 409. In March of 2005, Dr. Davis wrote, "She gives a history that she is manic. She did not behave in a manner consistent with that while in the office today." Tr. 403. In May of 2005, Dr. Davis wrote, "She states that she is anxious but does not display a great deal of behavior to validate that." In June of 2005, Dr. Davis noted, "She is getting roughly three hours per week of sleep. It is of note that she does not appear to be sleep deprived at this time." Tr. 394. He wrote in August of 2005, "Her affect is not congruent with a depression level of nine." Tr. 393. In December of 2005, he wrote, "Her affect today is

Page 12 - OPINION AND ORDER

not congruent with her stated level of depression." Tr. 385. Finally, in January of 2006, he noted "Her affect is not congruent with her level of depression as nine of ten. She does not appear to be overly anxious at this time." Tr. 383.

Because Dr. Davis' opinion that plaintiff was incapable of work was not supported by his own records, and because this is a valid reason to refuse to give controlling weight to a treating source opinion, the ALJ gave clear and convincing reasons for his decision. See 20 C.F.R. § 404.1527(d)(4), 416.927(d)(4) (factors to consider in weighing medical opinions includes consistency).

In addition, contrary to plaintiff's contention, the ALJ had no duty to contact Dr. Davis to obtain any further information. The ALJ concluded that Dr. Davis' opinion was not supported by his own medical records, which served as the basis for his opinion. This is not the kind of ambiguity requiring follow-up on the part of the ALJ. See 20 C.F.R. § 404.1512(e), 416.912(e) (when information is "inadequate" ALJ will contact medical source).

    B.    Dr. Beaman

Plaintiff also argues that the ALJ erred in relying on Dr. Beaman's assessment that plaintiff had no severe impairments, because he is a doctor and not a psychiatrist. Dr. Beaman opined that plaintiff could sit, stand and walk, but could not stand for a prolonged time. He suggested that her time standing be limited to no more than one hour continuously without a walking or sitting break throughout the day. He mentioned no mental limitations.

The ALJ remarked, "The claimant has been treated by Dr. Beaman for a number of other impairments including her mental condition, recurrent sinusitis, and other routine matters. Dr. Beaman did not describe significant symptoms or clinical observations that suggest severe

impairments." Tr. 35.  Dr. Beaman described plaintiff's affect as good, normal, and appropriate during his treatment of her from 2000 through July of 2003.  On two occasions, he described her as slightly anxious, and once as fatigued.  Tr. 198, 186, 184.

Contrary to plaintiff's argument, the ALJ cannot refuse to consider Dr. Beaman's treatment records simply because he is not a psychologist.  Lester, 81 F.3d at 833 (treating physician's opinion constitutes "competent psychiatric evidence" and may not be discredited on the ground that he is not a board certified psychiatrist).  The ALJ properly noted that Dr. Beaman did not identify any significant symptoms, and never indicated that plaintiff was limited by any mental impairments.

II.    Credibility Determination

Plaintiff challenges the ALJ's finding that plaintiff's impairments did not impose limitations to the point of disability, arguing that the ALJ was not sufficiently specific in coming to this conclusion.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  Smolen, 80 F.3d at 1281-82.  The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom.  The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  Id. at 1282.  In the

Page 14 - OPINION AND ORDER

second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony

regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the

ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and

convincing reasons for the rejection, including which testimony is not credible and what facts in

the record lead to that conclusion.  Id. at 1284.

Plaintiff produced medical evidence of underlying impairments consistent with her

complaints and there is no evidence that she is malingering.  Therefore, the ALJ must provide

clear and convincing reasons for not fully crediting plaintiff's representations about her

impairments.

The ALJ noted that plaintiff did the laundry and other household chores, and attended and

did well at college as a full-time student.  The ALJ also pointed out that plaintiff's husband

disclosed plaintiff could walk for 45 minutes at a time, do simple household chores, drive and do

errands.  The ALJ properly considered these daily activities in evaluating plaintiff's testimony.

See Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do

laundry, work in yard, and occasionally care for friend's child is evidence of ability to work).

The ALJ also pointed out that plaintiff did not leave past work due to any impairments, but that

she was laid off.

Furthermore, although plaintiff argues that her stated psychiatric impairments are

consistent with the medical record, the ALJ correctly noted that Dr. Davis almost without

exception noted plaintiff's improved or stabilized mental condition.  Similarly, although plaintiff

claimed an inability to stand for longer than 20 minutes, the ALJ noted Dr. Beaman's report that

plaintiff was able to exercise regularly, and that she reported to him in 2005 that her knee pain had resolved.

The ALJ gave clear and convincing reasons for not fully crediting plaintiff's testimony about her impairments.

III.     Severity of Bipolar Disorder, Anxiety, Depression, and Left Knee Impairment

An impairment is severe for the purposes of Step Two of the evaluation process if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). These include abilities such as "understanding, carrying out and remembering simple instructions," "use of judgment" and "responding appropriately to supervision, coworkers and usual work situations." 20 C.F.R. § 404.1521(b).

An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290. The inquiry at Step Two is a *de minimis* screening tool to dispose of groundless claims. Id.

There is no dispute that plaintiff suffers from anxiety, depression, and bipolar disorder. The question is whether these impairments are severe as defined in the regulations. Since the ALJ properly gave "scant weight" to Dr. Davis' opinion, and found plaintiff not fully credible, nothing remains in the record to suggest that plaintiff's mental impairments were something more than a minimal limitation at the time the ALJ issued his decision. Dr. Beaman did not identify any mental impairments and nothing else in the record at the time of the ALJ's decision indicates that plaintiff would have difficulty performing basic mental work activities. Plaintiff

Page 16 - OPINION AND ORDER

did not meet her burden of establishing that her depression, anxiety and bipolar disorder had anything other than a minimal effect on her ability to perform basic work activities. Accordingly, the ALJ's conclusion that plaintiff's anxiety, depression and bipolar disorder were not severe is supported by substantial evidence in the record.

Similarly, plaintiff failed to meet her burden of establishing that her left knee pain affected her ability to perform basic work activities. She informed Dr. Beaman in 2005 that her left knee pain had resolved.

Accordingly, the ALJ did not err in concluding that plaintiff's bipolar disorder, anxiety, depression, and left knee pain were not severe impairments.

IV.    <u>Residual Functional Capacity</u>

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991). The vocational expert's opinion about a claimant's residual functional capacity has no value if the assumptions in the hypothetical are not supported by medical evidence in the record. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756 (9th Cir. 1989).

The ALJ concluded that plaintiff could perform medium work, with a sit/stand option to accommodate her foot pain. Although the ALJ did not consider plaintiff's knee impairment to be severe, he noted that the RFC accounted for that limitation.

Plaintiff makes much of the fact that the ALJ opined her plantar fasciitis and calluses are treatable "as the undersigned knows from personal experience." Tr. 35. Plaintiff argues that the ALJ's personal experience is an inappropriate means to evaluate plaintiff's RFC. I find that the ALJ's remark was not the basis for plaintiff's RFC, but rather was "harmless dicta" as the

Commissioner argues.  Defendant's Brief at 11.  The ALJ noted that the treatment would cause "some difficulty with standing or walking" and created an RFC that was "generous in the claimant's favor."  Tr. 35, 36.  He ensured that any difficulty in walking or standing was accounted for in the sit/stand option.  Furthermore, because I find no error in the ALJ's assessment of Dr. Davis' opinion and plaintiff's own statements about her impairments, I find no error in the ALJ's RFC formation.

V.    New Evidence

Medical reports generated after an ALJ's decision may be material to a determination of whether the claimant was disabled prior to the date of the adverse decision.  Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988).  To be material, the new evidence offered must bear directly and substantially on the matter in dispute.  Burton, 724 F.2d 1415, 1417 (9th Cir. 1984).

Plaintiff points to a June 29, 2006, letter in which Dr. Davis stated, "This [letter] is to verify that [Monroe] does have a significant mental health condition.  When I last saw her I did not believe that she would be able to be employed for a period of at least one year."  Tr. 23.  The last report in the record prepared by Dr. Davis is from an April 6, 2006 visit that took place after the ALJ's decision.  At that session, plaintiff reported that she felt "very sick mentally.  She relates that she is very manic at the present time.  She relates that she has been this way for the past five weeks."  Tr. 378.  Dr. Davis noted that she "does appear to be significantly anxious," and appeared to be in a low-grade mania.  Tr. 378-79.

Plaintiff provided this letter to the Appeals Council, which found the opinion constituted new evidence.  Because Dr. Davis did not support the opinion with any new clinical or laboratory

records, however, the Appeals Council concluded the letter was not sufficient to overturn the ALJ's decision.

Plaintiff also provided Rennick's April 19, 2006 report, but the Appeals Council similarly concluded the report was not supported by any clinical or laboratory records.  As a result, it found the ALJ's decision was supported by the weight of the evidence.

According to the ALJ's opinion, plaintiff is insured through December 31, 2006. Although I agree with the Appeals Council that Dr. Davis gives appallingly little information in his opinion letter of June 2006, the report of his treatment of plaintiff in April, and Rennick's June  treatment record bears substantially on the question of whether plaintiff's depression, anxiety and bipolar disorder are severe impairments that impose at least some limitations on her ability to work.  As a result, I find these reports to be relevant to a determination of whether plaintiff was disabled prior to the ALJ's decision.

VI.    <u>Remand for Additional Evidence and Findings</u>

The court has the discretion to remand the case for additional evidence and findings or to award benefits.  <u>Smolen</u>, 80 F.3d at 1292.

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit.  <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003).  The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant.  <u>Id.</u>

I find that a remand for additional evidence and findings is appropriate.  The ALJ should evaluate whether plaintiff's anxiety, depression and bipolar disorder are more appropriately identified as severe impairments, given the more recent treatment records of Dr. Davis and

Rennick, and consider how plaintiff's residual functional capacity is affected, as well as her ability to perform past-work. The ALJ should also consider whether a psychological examination would be of assistance in determining whether plaintiff's mental impairments imposed functional limitations.

## CONCLUSION

The decision of the Commissioner is reversed. This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record concerning plaintiff's mental impairments. Judgment will be entered.

IT IS SO ORDERED.

Dated this _____13th_____ day of February, 2008.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge